## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **LYNN R. PRIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No.  14-2240-JAR** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant

Commissioner of Social Security denying Plaintiff Lynn Prier's application for disability

insurance benefits under Title II of the Social Security Act.[1]  Because the Court finds that

Defendant Commissioner's findings are not supported by substantial evidence, the Court

reverses and remands the decision of Defendant Commissioner.

## I.      Procedural History

On July 28, 2011, Plaintiff protectively applied for a period of disability and disability

insurance benefits, alleging an onset date of July 1, 2008.  Plaintiff was last insured for disability

insurance benefits on September 30, 2009.  Plaintiff's application was denied  initially and upon

reconsideration.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ").

After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals

Council denied plaintiff's request for review of the ALJ's decision.  Plaintiff then timely sought

judicial review before this Court.

---

[1]42 U.S.C. §§ 401–434.

## II.      Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.     Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7]  If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs*., 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id*. (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[7]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[9] since July 1, 2008, the alleged onset date.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: history of renal cell carcinoma in remission-status post nephrectomy; fibromyalgia; and anxiety with a depressive state.  Nor does Plaintiff challenge the ALJ's determination at step three that she does not have an impairment or combination of impairments that meet or equal a listing.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC") based on the ALJ: (1) giving "little weight" to the opinion of Plaintiff's treating therapist, Gwendolyn Burke, rather than recontacting Ms. Burke  to develop the record further; (2) improperly evaluating Plaintiff's credibility; and (3) failing to include in the RFC limitations on Plaintiff's contact with co-workers and supervisors.  Plaintiff further challenges the ALJ's determination at step four because the ALJ did not make any specific findings regarding the physical and mental demands of Plaintiff's past relevant work and erroneously adopted the Vocational Expert's testimony.

---

[8]*Id.*

[9]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

**IV.     Discussion**

    **A.     Determination of mental RFC, failure to include limitations on contact with co-workers and supervisors, weight given the opinion of treating therapist, and failure to develop record**

At step 2, the ALJ found that Plaintiff had a severe impairment of "anxiety with a depressive state."  But at step 4, the ALJ's RFC included only two mental limitations: that Plaintiff cannot perform work with high production quotas or rapid assembly line work, and that Plaintiff should have only occasional contact with the public.  At step 4, the ALJ must determine the claimant's RFC and include a narrative discussion describing how the evidence supports the RFC assessment, citing specific medical and nonmedical evidence.[10]

Here, Plaintiff contends that the ALJ erred in giving "little weight" to the opinion of her treating therapist, Gwendolyn Burke, L.C.S.W., of Psychiatric Professional Associates.  Ms. Burke opined that Plaintiff  had moderate limitations in her ability to interact appropriately with the general public, and moderate to marked limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, as well as moderate limitations in her ability to get along with co-workers or peers.  The ALJ's RFC assessment was that Plaintiff could have only occasional contact with the public; but the ALJ placed no limitation on Plaintiff's ability to interact with co-workers and supervisors.  The nature and extent of these social limitations is material, as Plaintiff posits, because  competitive, remunerative, unskilled work generally requires such mental activities as "[r]esponding appropriately to supervision, co-workers and usual work situations."[11]

---

[10]SSR 96-8p, 1996 WL 374184 (July 2, 1996).

[11]*Id.*

It is clear that the ALJ not only gave "little weight" to Ms. Burke's opinion,  the ALJ

entirely disregarded Ms. Burke's treatment records.  In fact, the Disability Determination

Explanation of state agency psychologist Dr. Carol Adams included a notation from Wandella

Scott that the treatment record from Psychiatric Professional Associates was "not requested

because it is not within the relevant period needed for adjudication purposes, or for another

reason discussed below." The ALJ expressly disregarded Ms. Burke's opinion and treatment

records for two reasons.  First, Ms. Burke did not commence treating Plaintiff until January

2011, after the last insured date of September 30, 2009.  Second, there is no evidence that

Plaintiff received consistent mental health treatment between the alleged onset date of July 1,

2008 and September 30, 2009, and no evidence that Plaintiff's mental health condition extended

back to this period.

To be sure, medical evidence subsequent to the date last insured,[12] as well as medical

evidence before the onset date is relevant to a determination of RFC,[13] to the extent such

evidence demonstrates that the claimant had an ongoing or progressive medical condition,

impairment or limitation that likely existed during the period between onset date and date last

insured.[14]  However, where there is no evidence that the claimant had the condition before the

---

[12]*Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir.1993) (citing *Gold v. Sec'y of Health, Ed. & Welfare*, 463 F.2d 38, 41–42 (2d Cir. 1972) (finding pertinent, evidence that eighteen months after the expiration of her insured status, claimant's doctor found her to be totally disabled); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir.1984) (ALJ erred in refusing to consider evidence from a time period subsequent to period of insurance, as such evidence was relevant)).

[13]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)(citing *Groves v. Apfel*, 148 F.3d 809, 810–11 (7th Cir.1998) (evidence submitted in an earlier application is relevant to a later application when determining whether claimant is disabled by a progressive condition)).

[14]*Id.*

date last insured, medical records from after the date last insured are not relevant.[15]

Here, the ALJ erred in finding that there was no evidence that Plaintiff's mental impairments extended back to the relevant time period, between the alleged onset date of July 1, 2008 and the date last insured, September 30, 2009.  The ALJ only acknowledged that there are "references to anxiety attacks and depression prior to the date last insured."  But the record reveals more than passing references to anxiety attacks and depression.  In a September 10, 2007 treatment note, prior to the alleged onset date, the provider noted that Plaintiff had depression, memory issues and insomnia.  And, in March 2008, prior to the alleged onset date, Plaintiff sought treatment for these same issues.

Furthermore, during the period between alleged onset date of July 2008 and the date last insured of September 30, 2009, Plaintiff sought treatment for anxiety and depression on four occasions, in October and November 2008, and January and March 2009.  These treatment providers prescribed a variety of anti-anxiety and anti-depressant medications.  And, Plaintiff testified that beginning in 2008, when her sister died, she began experiencing extreme panic attacks and severe, debilitating depression such that she was socially isolated and stayed at home.  Plaintiff further testified that over the last four years she had experienced difficulty concentrating and sometimes difficulty understanding simple directions or questions.  While Plaintiff did not seek treatment on a monthly basis during the relevant period, she periodically sought treatment and followup, and the treatment providers consistently treated her with prescribed medications.  The ALJ erred in finding that there was no evidence of mental impairments extending back to 2008 and 2009 and erred in finding that Plaintiff had not received

---

[15]*Grede v. Astrue*, 443 F. App'x 323, 326 (10th Cir. 2011).

consistent treatment.

Given this evidence that Plaintiff suffered from mental impairments before and during the time period of onset date through date last insured, the ALJ erred in entirely disregarding the medical evidence of Ms. Burke's treatment of Plaintiff in 2011.  This medical evidence was relevant and material to shedding light on the nature and severity of Plaintiff's mental impairments and limitations, concerning an ongoing mental condition.  In disregarding Ms. Burke's treatment records, the ALJ disregarded substantial, relevant evidence.  In so doing, the ALJ failed to carefully consider all of the relevant evidence and failed to link her findings to specific evidence.[16]  And when the ALJ fails to provide a narrative discussion describing how the relevant evidence supports each conclusion, citing both to specific medical and nonmedical evidence, the court must conclude that the ALJ's RFC conclusions are not supported by substantial evidence.[17]

Ms. Burke's treatment notes reveal that she treated Plaintiff on nine occasions, between January 2011 and December 2011.  At the outset of their treatment relationship, Ms. Burke administered the Zung Self-Rating Depression Scale test to Plaintiff and concluded that Plaintiff had severe to extreme depression.  Thereafter, between January 2011 and August 2011, when Ms. Burke rendered an opinion, and continuing thereafter, through December 2011, Ms. Burke's treatment notes consistently reflect that Plaintiff was struggling with anxiety, panic attacks and depressive disorder despite Plaintiff's physician prescribing a variety of medications for these conditions.  Ms. Burke also noted her observations of Plaintiff's affect and demeanor, and on at

---

[16]*See Spicer v. Barnhart*, 64 F. App'x 173, 177–178 (10th Cir. 2003).

[17]*See Southard v. Barnhart*, 72 F. App'x.781, 784–785 (10th Cir. 2003).

least three occasions noted that Plaintiff presented to her office with loud and inappropriate laughing and conversation.  At times Plaintiff had daily panic attacks; at times she had periodic or sporadic panic attacks, all of which showed no lasting improvement with medications.

     The ALJ also determined Plaintiff's mental RFC without reliance upon any medical evidence or opinion at all, another reversible error.  The ALJ sought an opinion from Dr. Carol Adams, the state agency psychologist.  But Dr. Adams declined to complete a PRT or give an opinion about Plaintiff's mental limitations, noting in the Disability Determination Explanation dated April 10, 2012, that there was insufficient evidence and "no real functioning information for the time period."  While the  ALJ acknowledged that Dr. Adams declined to render an opinion based on insufficient evidence, the ALJ nonetheless inexplicably concluded that Plaintiff's "functional limitations can, in fact, be assessed and, as a result, [the ALJ] gives little weight to the State agency findings."

     Thus, in determining Plaintiff's RFC, the ALJ neither considered critical treatment records, nor had the benefit of an opinion from Dr. Adams, nor any other acceptable medical source.  Notably, although neither the ALJ nor the parties in their briefing to this Court draw the distinction, Ms. Burke, as a licensed clinical social worker, was not an "acceptable medical source"[18] under the Social Security regulations, because she was  neither a physician nor licensed psychologist.[19]   The import of this distinction is that while both "acceptable medical sources" and "other medical sources" can provide evidence to establish the severity of a claimant's

---

[18]20 C.F.R. §404.1513(d)(1).

[19]20 C.F.R. §404.1513(a)(2).

impairment(s) and how it affects the claimant's ability to work,[20] only acceptable medical sources can provide a medical *opinion*,[21] and only acceptable medical sources can be considered treating sources.[22]   That is not to say that the ALJ properly ignored the treatment records of Ms. Burke or that the ALJ should have ignored Ms. Burke's opinion.  Rather, Ms. Burke's opinion should have been given due consideration, just not the presumed weight accorded the opinion of a treating acceptable medical source.  In short, the ALJ determined the RFC in error, without an opinion from an acceptable medical source, and disregarding treatment records and the opinion of an other medical source who had a treatment relationship with Plaintiff.

The Commissioner argues that Plaintiff's attorney foreclosed any argument that the ALJ erred in determining RFC based on this incomplete record, because during the ALJ hearing, Plaintiff's counsel responded affirmatively when the ALJ asked if the record was complete.  The Court disagrees with the Commissioner, for the ALJ has a duty to ensure that the record is fully developed, and to "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."[23]   Because the disability hearing is  non-adversarial, an ALJ is obligated to develop the record even where the claimant is represented by counsel.[24]   Asking a plaintiff's counsel whether the record is complete is akin to asking whether the evidence has been submitted.  While the ALJ should generally be entitled to rely on the claimant's counsel to

---

[20]20 C.F.R. §404.1513(a) (citing §404.1508); 20 C.F.R. §404.1513(d).

[21]SSR 06-03P, 2006 WL 2329939.

[22]20 C.F.R. §404.1502

[23]*Fleetwood v. Barnhart*, 211 F. App'x 736, 740 (10th Cir. 2007)(citing Soc. Sec. R. 96–8p, 1996 WL 374184, at *5).

[24]*Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir.1993).

identify issues needing further development, here it was apparent to the ALJ that there was a need for further development; the ALJ acknowledged that the state agency psychologist declined to render an opinion for lack of sufficient evidence.  This placed the ALJ on notice that she had a duty to develop the record.[25]  Moreover, the record included the treatment records of Ms. Burke and earlier mental health providers, but the ALJ improvidently chose to disregard that evidence.

The duty of the ALJ to develop the record when presented with medical evidence from the treating provider that the ALJ deems insufficient, is addressed by the Tenth Circuit in *Carter v. Chater*.[26]  In *Carter*, the ALJ rejected the treating psychologist's diagnosis of depression because there was no testing or clinical interview supporting this opinion.  The Tenth Circuit held that the ALJ erred in not developing the record by obtaining medical tests concerning depression and/or ordering a consultative examination of the claimant for depression.[27]  For when the ALJ determines that the evidence received from a medical source is inadequate to determine whether the claimant is disabled, the ALJ must necessarily seek additional evidence. [28]

Upon remand, the ALJ must properly consider and discuss all relevant medical evidence, including the treatment records of mental health providers in 2007-2009, and the treatment records of Ms. Burke in 2011.  Upon remand, the ALJ must rely upon this evidence as well as further develop the record to ascertain Plaintiff's mental condition and limitations during the

---

[25]*See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).

[26]73 F.3d 1019, 1021–22 (10th Cir. 1996).

[27]*Id., See also Maes,* 522 F.3d at 1097–98 (ALJ had duty to re-contact treating sources where claimant had been prescribed anti-depressants but there was no diagnosis or record of treatment for depression; but where the record did not reveal treatment by a particular physician and the claimant neither informed the ALJ about that physician, nor made any effort obtain that physician's records, the court would not remand for development of the record).

[28] *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)(citing 20 C.F.R. § 404.1512(e) and SSR 96-5p.).

relevant period of onset date through date last insured.  In this case, further development should

include obtaining a consultative mental examination[29] and a retrospective opinion of Plaintiff's

impairments and limitations during the time period at issue.[30]   The ALJ may also seek an

opinion from a state agency psychologist who reviews all non-medical and medical evidence,

including the treatment records of Ms. Burke, the consultative examination findings and the

retrospective opinion.

### B.    Failure to make specific findings about Plaintiff's past relevant work

Plaintiff further contends that the ALJ erred at step 4 in failing to make specific findings

regarding the physical and mental demands of Plaintiff's past relevant work.  At step 4, the ALJ

is required to make specific findings at each of three phases, regarding: 1) the claimant's RFC;

2) the physical and mental demands of the claimant's prior jobs or occupations; and 3) the ability

of the claimant to return to the past occupation given her RFC.[31]   Moreover, at each of these

three phases, the ALJ must make specific findings.[32]

According to SSR 82-62, in determining the physical and mental demands of a prior job

or occupation, the ALJ should examine both the exertional and nonexertional demands of the

job.  The ALJ should make a careful appraisal of the claimant's testimony as to past work

requirements that he or she believes they can no longer meet and the reasons for their inability to

meet those requirements, the impact of medical evidence as to whether the impairment limits the

---

[29]*See* 20 C.F.R. 404.1519(b).

[30] *See* 20 C.F.R. § 404.1519a; *Hoffman v. Apfel*, 62 F. Supp. 2d 1204, 1212 (D. Kan. 1999) (a retrospective diagnosis is permissible opinion evidence to support an award of benefits).

[31]*Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993).

[32] *Id*. (citing SSR 82-62, 1982 WL 31386).

ability to meet the physical and mental requirements of the work, and in some cases, information

from other sources, such as employers or the Dictionary of Occupational Titles on the

requirements of the work as generally performed in the economy.[33]

Here, at the first phase of the step 4 analysis, the ALJ found that Plaintiff has the RFC to

> lift and carry twenty pounds occasionally and ten pounds
> frequently; sit for six hours and stand or walk for six hours in an
> eight-hour work day but must be able to alternate sitting and
> standing briefly, every one to two hours; occasionally stoop or
> bend, kneel, crouch, crawl, and climb stairs and ramps; never
> climb ladders, ropes or scaffolds; should not perform work with
> high production quotas or rapid assembly line work; and should
> have only occasional contact with the public.

The ALJ did not expressly find what level of work Plaintiff could perform with this RFC.  At the

second phase of the step 4 analysis, the ALJ stated that she relied upon the evidence of record

and the vocational expert's testimony.  But then the ALJ apparently fully adopted the testimony

of the vocational expert ("VE") that Plaintiff was capable of performing past relevant work as an

"office manager: DOT #169.167-034; SVP 7," a "bookkeeper: DOT #210.382-014; SVP 6," and

an "insurance clerk: DOT #219.482-014: SVP 5," all of which were performed at  a sedentary

exertional level.

Because the ALJ apparently merely relied upon the VE's testimony without explaining

her own findings and the evidence supporting those findings, this Court cannot meaningfully

review the ALJ's decision.[34]  Moreover, the Court questions whether certain findings would be

supported by substantial evidence, even if explained.  For example, as Plaintiff posits, there is

---

[33] SSR 82-62, 1982 WL 31386.

[34] *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996) (discouraging the practice of delegating to a vocational expert the ALJ's fact finding responsibilities, including the physical and mental demands of a claimant's past relevant work, as precluding a meaningful judicial review).

some question as to whether Plaintiff's past work as an insurance clerk qualifies as past relevant work, given that Plaintiff did this work part-time for a few months such that it may not have been substantial gainful activity.

Another finding that is questionable and that should be revisited by the ALJ upon remand, is the ALJ's finding that Plaintiff could perform past work was an office manager, citing DOT #169.167-034.  According to DOT #169.167-034, a significant part of the job of office manager is interacting with people, including directing and controlling the activities of others. Given Plaintiff's moderate difficulties maintaining social contact and her inability to have contact with the public on more than an occasional basis, it seems unlikely that Plaintiff can perform the job of office manager.

Defendant does not dispute this inconsistency between the VE's testimony and the description of office manager in the DOT, but argues it was Plaintiff's duty to cross-examine the VE about this inconsistency.  However, the Tenth Circuit has held that it is not the claimant's duty to cross examine the VE, but rather, the ALJ has the burden to investigate whether a vocational expert's opinion conflicts with information provided in the Dictionary of Occupational Titles, and elicit an explanation for any inconsistency.[35]

Furthermore, the ALJ did not ask Plaintiff or otherwise determine the actual physical and mental demands of Plaintiff's past work.  For this reason, as well as the ALJ's failure to make any factual findings comparing Plaintiff's limitations to the demands of her past relevant work,

---

[35]*Haddock v. Apfel*, 196 F.3d 1084, 1091 n.2 (10th Cir. 1999).

this Court finds error, and reverses and remands.[36]

Moreover, upon remand, the ALJ must follow the directives of the Tenth Circuit in

*Henrie v. United States Dep't of Health & Human Services*,[37] where the court stressed that

> when the claimant's impairment is a mental one, care must be
> taken to obtain a precise description of the particular job duties
> which are likely to produce tension and anxiety, e.g., speed,
> precision, complexity of tasks, independent judgments, working
> with other people, etc., in order to determine if the claimant's
> mental impairment is compatible with the performance of such
> work.[38]

### C.        Evaluation of Plaintiff's Credibility

Plaintiff contends the ALJ also erred in evaluating her credibility, and consequently

improperly: (1) construing her ability to do light household work and other limited activities of

daily living as inconsistent with disability, and (2) evaluating the effects of her severe

impairment of fibromyalgia.  In evaluating the credibility of subjective complaints, such as pain

or limitations associated with fibromyalgia, it is proper for the ALJ to consider the claimant's

activities of daily living.[39]  But the sporadic performance of household tasks, the ability to do

personal care, and the ability to do a variety of other activities on an occasional or infrequent

basis does not establish that a person is capable of substantial gainful activity.[40]  Upon remand,

---

[36]*See Bowman v. Astrue*, 511 F.3d 1270, 1273 (10th Cir. 2008) (ALJ erred in failing to make specific findings about the demands of the claimant's past relevant work and thus failed to make the necessary "function by function" comparison between the claimant's limitations and the demands of claimant's past work); *Frantz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007) (reversing where ALJ did not develop any evidence regarding the mental demands of claimant's past relevant work).

[37]13 F.3d 359, 360–361 (10th Cir.1993).

[38] *Id.*

[39] *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

[40]*Id.*

the ALJ must consider Plaintiff's activities of daily living consistent with the regulations, as well as the *Thompson* case and its progeny.

Moreover, given that Plaintiff has the severe impairment of fibromyalgia, the ALJ should be mindful that discrediting a Plaintiff's complaints of pain, symptoms, and limitations from fibromyalgia because of the lack of clinical evidence, indicates a fundamental misunderstanding of fibromyalgia.[41] As the Tenth Circuit explained, fibromyalgia is a disease that is "poorly-misunderstood within much of the medical community [and]. . . .is diagnosed entirely on the basis of patients' reports and other symptoms."[42] There are no laboratory tests for the presence or severity of fibromyalgia, which can be disabling; the primary symptoms are pain all over the body, fatigue, disturbed sleep, and multiple tender points, while muscle strength, sensory functions and reflexes are normal despite the patient's complaints of numbness.[43]

Moreover, the ALJ apparently discredited Plaintiff's subjective complaints of ongoing symptoms from her severe impairment of history of renal cell carcinoma in remission-status post nephrectomy, because there is no evidence of recurrence of cancer or additional cancer treatment. Yet the ALJ did not mention other medical evidence in the record suggesting that Plaintiff continues to suffer from a number of symptoms that are perhaps related to this severe impairment, including fatigue and abdominal pain, oral thrush, intermittent hematuria, weakness, dizziness, polydipsia, hypotonic hyponatremia, tachycardia, low Vitamin D levels and

---

[41] *Moore v. Barnhart*, 144 F. App'x 983, 990–991 (10th Cir.2004). Plaintiff cited to a number of court decisions from the Eighth Circuit, on this point and others. Plaintiff is reminded that this Court is in the Tenth Circuit and decisions of that court are authoritative, not decisions by the Eighth Circuit.

[42]*Id.* at 991 (citations omitted).

[43]*Id.*

elevated CRP and A1c levels.

Upon remand, the ALJ must also follow the proper legal standards in evaluating Plaintiff's pain testimony, including SSR 96-7p[44] and the factors for evaluation of pain testimony, as required by the Tenth Circuit in *Luna v. Bowen*.[45]  The ALJ must also consider all of the medical and non-medical evidence in evaluating the credibility of Plaintiff's subjective complaints.

**V.     Conclusion**

For these reasons, the Court concludes that the decision of the ALJ must be reversed for failing to consider the treatment records and opinion of Plaintiff's treating therapist, failing to develop the record on Plaintiff's mental impairments, failing to make specific findings at the second and third phases of the step 4 analysis and failing to properly evaluate Plaintiff's credibility, including ongoing effects of her renal cell carcinoma, as well as the effects of her severe impairment of fibromyalgia and her subjective complaints of pain.

Upon remand, the Commissioner is directed to: (1) properly develop and evaluate the record concerning Plaintiff's mental impairments consistent with the directives in Subpart IV.A of this opinion; (2) properly make specific findings concerning the actual physical and mental demands of Plaintiff's past relevant work and compare these demands to Plaintiff's limitations consistent with the directives in Subpart IV.B of this opinion; and (3) evaluate Plaintiff's credibility consistent with the directives in this opinion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision

---

[44]SSR 96-7p, 1996 WL 374186 (July 2, 1996).

[45]834 F.2d 161, 164–66 (10th Cir.1987).

denying Plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

      **IT IS SO ORDERED.**

Dated: <u>March 26, 2015</u>

                               <u>S/ Julie A. Robinson</u>

                              JULIE A. ROBINSON

                              UNITED STATES DISTRICT JUDGE